[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 571.]

CUYAHOGA COUNTY BAR ASSOCIATION *v.* PETRANCEK.

[Cite as *Cuyahoga Cty. Bar Assn. v. Petrancek*, 1996-Ohio-360.]

*Attorneys at law—Misconduct—Indefinite suspension—Failure to identify and label client's securities and properties promptly upon receipt and place them in a place of safekeeping as soon as practicable—Failure to maintain complete records of all funds, securities, and other properties of a client in attorney's possession and render appropriate accounts to client regarding them—Failure to promptly pay or deliver to client as requested funds, securities, or other properties in attorney's possession which client is entitled to receive—Neglect of an entrusted legal matter—Wrongfully attempting or limiting liability for malpractice—Violation of a Disciplinary Rule—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Engaging in conduct prejudicial to the administration of justice—Engaging in conduct that adversely reflects on fitness to practice law.*

(No. 96-987—Submitted June 25, 1996—Decided October 2, 1996.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-57.

————————————

{¶ 1} The Cuyahoga County Bar Association, relator, filed an amended complaint on January 25, 1995, charging respondent, Frank Petrancek of Garfield Heights, Ohio, Attorney Registration No. 0029187, with violating several Disciplinary Rules. Respondent filed an answer, and on June 29, 1995, a hearing was held before a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board"). At the hearing the following facts were adduced.

**{¶ 2}** Elsie Goecker, the executor of the Estate of Lillian Faflik, retained respondent in February 1984 to render services to the estate. In December 1984, Goecker gave respondent a money order for $34,217.54, which was the proceeds of a joint and survivorship account she held with Faflik. Goecker asked respondent to "hold this money" and "pay whatever expenses there are." Respondent, who did not maintain a client trust account, did not open a bank account for the estate, but rather converted the money order to cash, put it in a metal box and placed it under a floor board in his attic.

**{¶ 3}** Goecker died in April 1985. Although one Robert Karr was named in the will as successor executor of the Faflik estate, respondent did not notify the probate court of the death of Goecker or arrange for the appointment of Karr as successor executor. On the basis of probate court forms which respondent had Goecker sign in blank before her death, respondent in late 1986 filed a final account in the Faflik estate. Respondent failed to file a timely tax return in the Faflik estate and the estate incurred a penalty.

**{¶ 4}** Pearl Byrne, sister and heir of Goecker and executor under her will, retained respondent to handle the probate of Goecker's estate. Respondent did not report the $34,217.54 as an asset in Goecker's estate. In 1990, respondent closed the Goecker estate but did not distribute any funds. In 1991, respondent provided Byrne with a combined accounting of the Faflik and Goecker estates including attorney fees paid to himself. Beginning in 1992, Marybeth Connolly, Byrne's niece, contacted respondent several times seeking to have the estate's money turned over to Byrne. Respondent falsely assured Byrne and Connolly that the funds were in his mother-in-law's safe-deposit box. After Byrne complained to relator, respondent attempted to settle the matter and, in late 1993 and 1994, turned over the balance of funds to her.

**{¶ 5}** In 1988, respondent was retained to draft the will of Elmer Chipkesh in which he was named executor. The will, which contained a specific bequest of

a car to Andrew Goczo, designated James Ivan and his wife as primary beneficiaries. At the time the will was drawn, Chipkesh had been sued by Cleveland Clinic and was liquidating all his assets, including a house.

{¶ 6} Chipkesh died in July 1991. Shortly thereafter, William Chipkesh, brother of the decedent, took the decedent's stamp collection and jewelry items. On July 16, 1991, William Chipkesh arranged a meeting with James Ivan, Joseph Ivan, his brother, and respondent. Just prior to the meeting, William Chipkesh gave Joseph Ivan an envelope with $13,000 in cash telling him to do whatever he wanted with it. At the meeting, respondent, who was unaware of the $13,000 or the stamp collection, but knew only of the existence of one automobile and some small bank accounts in the name of Elmer Chipkesh, told those in attendance that no one was going to get anything under the will and because of the claim of Cleveland Clinic, respondent advised delay in the administration of the estate. After meeting with respondent, Joseph Ivan gave James Ivan the envelope with the cash; James Ivan put it in a safe-deposit box until he employed attorney Michael O'Brien fifteen months later. After meeting with respondent, William Chipkesh took possession of the car to store it, and the car was later towed to respondent's residence.

{¶ 7} In October 1992, James Ivan retained attorney Michael O'Brien to investigate the delay in the administration of the Elmer Chipkesh estate. O'Brien contacted respondent several times inquiring about substantial assets which might have been owned by Elmer Chipkesh and received minimal responses. In March 1993, James Ivan applied to the probate court and was appointed as administrator of the estate of Elmer Chipkesh with will annexed. The inventory of the estate filed by James Ivan totaled $20,689.14, and consisted of the $13,000 held by James Ivan, the automobile, and the small bank accounts. Tax penalties were incurred as a result of the delay in opening the estate.

{¶ 8} With respect to his conduct in the Faflik and Goecker estates, the panel found that the respondent had violated DR 9-102(B)(2) (identify and label a

client's securities and properties promptly upon receipt and place them in a place of safekeeping as soon as practicable), 9-102(B)(3) (maintain complete records of all funds, securities, and other properties of a client in the atttorney's possession and render appropriate accounts to his client regarding them), 9-102(B)(4) (promptly pay or deliver to the client as requested funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive), 6-101(A)(3) (neglect a legal matter entrusted to him), 6-102(A) (wrongfully attempt to or limit attorney's liability to a client for personal malpractice), 1-102(A)(1) (violate a Disciplinary Rule), 1-102(A)(4) (engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (engage in conduct prejudicial to the administration of justice), and 1-102(A)(6) (engage in any conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 9} With respect to his conduct in the Chipkesh matter, the panel found that the respondent had violated DR 6-101(A)(3) (neglect a legal matter entrusted to him), 1-102(A)(1) (violate a Disciplinary Rule), and 1-102(A)(4) (engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

{¶ 10} The panel received the testimony of one character witness and various letters regarding respondent's good character and reputation. The panel recommended that respondent be suspended from the practice of law for two years, with one year stayed, and that, upon reinstatement, respondent's practice be monitored by the Cuyahoga County Bar Association. The board adopted the findings and conclusions of the panel, but recommended that the respondent be suspended indefinitely from the practice of law in the state of Ohio.

_____

*Frank R.DeSantis, Ellen S. Mandell* and *Lenore Kleinman*, for relator.

*Franklin G. Kochtan*, for respondent.

_____

***Per Curiam.***

{¶ 11} We accept the findings and recommendations of the board. We are particularly concerned that respondent should have retained his client's funds for nine years without depositing them as required by DR 9-102(A), and that, rather than seek the appointment of a successor fiduciary, he would file with the probate court documents signed in blank by the deceased executor.

{¶ 12} Our rules require, and clients should expect, that funds given to a lawyer will be maintained in a bank account. We do not regard money in a box under an attic floorboard as the equivalent of a bank account.

{¶ 13} Just as troubling to us is that a lawyer of some experience would not only ask his client-executor, who is a fiduciary responsible for estate administration, to sign documents in blank, but that he would also later file those documents in the probate court after the death of the client-executor. To ask an executor to sign documents in blank to be later filled out by the attorney is to imply to the client that the stringent requirements of fiduciary responsibility are mere formalities. The fiduciary's account opens with the words, "The fiduciary offers an account of his trust given below ***. The fiduciary says that to his knowledge the account is correct ***." The signature of a party to such a document is a certification that the contents of the document are accurate and complete to the best of the knowledge of the signator. Signing a blank account is tantamount to signing a false account. Here the respondent, as attorney for the estate, aided the executor to prepare a document which, when filed, would have placed the executor in violation of Civ.R. 11.

{¶ 14} That, after the executor's death, respondent himself should complete and file documents previously signed in blank by the executor reveals a total disrespect for our system of probate law. In so doing, the respondent ignored the statutory requirement to seek a successor fiduciary, acted without authority, his client being deceased, and perpetrated a fraud upon the court.

**{¶ 15}** Accordingly, we hereby suspend the respondent indefinitely from the practice of law in Ohio. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

––––––––––––––––––